May it please the court and counsel for the appellant, I am Michael Schneider and I'm representing the Municipal Emergency Services. This case too is manifest weight of the evidence, Your Honors. And I would start off by saying I recognize that it is solely within the province of the Commission to weigh the evidence. I understand that a reviewing court's function, whether it's the local circuit court or this Honorable Court, is not to re-weigh the evidence or reject inferences drawn by the Commission simply because other inferences could have been drawn. And I'll also concede that a decision of the Commission is against the manifest weight of the evidence only when no rational trier of fact could have agreed with the agency. Who did they depend upon? Pardon me? Who did they depend upon? What doctor or what system? When you say who did they, who's that? The Commission. The Commission relied primarily on the respondent's doctor, Dr. Skoleski. They also more or less disavowed the opinions of the treating doctor and said that many of his opinions didn't have the foundation to support them. Nonetheless, Your Honor, Tazewell County Circuit Court failed to adhere to any of those admonitions, came to the unwarranted conclusion that the reversal and remand of the Commission decision was in order. And they found that the first Commission's decision was against the manifest weight of the evidence, and I would venture to say by implication they found, the circuit court found the Commission's decision to be irrational. The underlying case involves questions of medical causation. If I would refer the Court to my appendix, A4 through 7, you'll find the pertinent parts of the arbitrator's decision, which was affirmed and adopted by the Commission. When you do so, one is provided with the thought process by which the Commission chose to accept or reject various factual and medical evidence placed before it. The findings there were cogent and compelling and should not have been tampered with. The Commission, I think this Court has recognized on many past occasions, is certainly free to accept certain medical opinions and to reject others. And it is its role as trier of fact. In this instance, that's precisely what they did. And they took great pains, it seems, to explain their reasoning, and that's within those cited appendix pages. All right. So to you, they're saying this is a simple case. You're saying that the Commission, there was conflicting medical opinions between Skoletsky and is it Delheimer? Delheimer, Skoletsky, and Weinger. And I misspoke. It's Delheimer that was the Respondent's position, Judge. Yes. So you're saying then why can't the Commission just decide the credibility and believability of the witnesses in the way to be given and make its decision, right? It shouldn't have been overturned. That's essentially it, Your Honor. It's not a one-sided affair. And if you would read those cited pages, you'll see reasoning. I, for one, think it's good reasoning, even if this Court, as I said a moment ago, thought another situation or another tact might have been more appropriate. That's not what we're about here. And it seems to me, furthermore, I wanted to make one other point. I can't tell you what the Circuit Court found to be irrational as it chose to issue the summary reversal. There is not so much as one word in their order, and I think that's Appendix page 10, that explains why they thought the Commission's decision was against the manifest weight. It simply says, against the manifest weight of the evidence, reverse and remand. So there's no guidance there. The Commission, on the other hand, and perhaps I'm starting to repeat myself, gives you a cogent, reasoned decision, and it's one that should be affirmed. Thank you, counsel. Thank you. Counsel, please. Please, this Court and counsel, Chris Stoskosch on behalf of Mr. Wagner. Counsel is correct. It is a manifest weight of the evidence issue in this matter. I want to start in July 2005 when the adjuster in this case terminated Mr. Wagner's benefits. At that time, the adjuster terminated Mr. Wagner's benefits for real estate reasons unknown but assumed to be the incident with the dog. At the time that the adjuster terminated the benefits in this case, the adjuster had no medical evidence to support that decision. On the other hand, the petitioner at that time had provided a report and an office note from Dr. Wagner discussing the stepping over of the dog to be a trivial incident and that the L45 disc had been injured in the initial accident in October 2004. The petitioner also had an independent medical exam performed by Dr. Skoletsky who said that the L45 disc was injured. That's what was causing his pain while he was in therapy, requiring the ultrasound, those issues. And the dog incident, again, aggravated the disc that was already injured in the initial incident. This is provided to the respondent, yet they deny this case, which is not  The L45 disc is not a trivial incident. It requires medical testimony. There's numerous medical issues. So finally, in October, the respondent gets an independent medical exam, four months after the adjuster has already decided that there is no medical causation in this case, and they get Dr. Delheimer. And I know why they got Dr. Delheimer. Now, Dr. Delheimer's credentials weren't put into evidence, but with the commission and this court, I'm sure it's familiar with him. Dr. Delheimer does an independent medical exam in October 2005. First, when you have three children, you're waiting around six years for surgery, you would think in a case where this dog incident is a big factor that it would be clear whether Dr. Delheimer even knew how the incident occurred. But if you read the reports and evidence here, he calls it a fall or a trip and a fall. Well, that's not what it was. Mr. Wagner at the time was stepping over a small dog, and to avoid stepping on the dog, stepped around it and then had this increase in his back pain. Okay. So first, Dr. Delheimer doesn't know how this occurred. Secondly, this MRI ---- Did the commission know that Dr. Delheimer didn't know? Was it pointed out at this point? Well, Judge Barr in this case did reverse. And it's not something that ---- I'm not talking about what Judge Barr did. I'm talking about what the commission did. Well, there has to be some check or balance, or there would be no point never having any type of review on these types of cases. And at this point, the appellate court or the circuit court are that final check and balance for an injured worker to make sure that there is not an injustice done to either party, whether it's the respondent or the petitioner. And in this case, we can't just because a doctor submits a report with a contrary opinion saying, well, we've got battling experts and they can decide. Dr. Delheimer's report has to have some logical, factual basis to support it, or it should not be considered. And then an opposite conclusion is clearly apparent, like this MRI issue. If Dr. Delheimer is going to give an opinion on whether the L4-5 disc was injured in October, I think it would have been nice for Dr. Delheimer to actually have looked at at least the report or the film when he issued the initial report. He didn't issue a report saying, please provide me with this and then I will give you my final opinions. No, he renders a summary conclusion only looking at the MRI after the dog incident. So that's the second basis. Third, Dr. Delheimer calls Mr. Wagner's post-operative treatment normal. That is contrary to logic. It's irrational. If you look at the records and what Dr. Sklecki and the treating doctors said in this case, there's one note where there's no mention of pain. All the physical therapy notes talk about him having problems throwing a ball, can't ride in a car, had to get out many times. The Ultraset, which is a narcotic, can't even touch his pain. He's still off work. Just nine days before this incident where he steps over a dog, again, a very trivial incident as described by Dr. Wagner, he gets a CT scan. In what case in a normal post-operative back surgery case are petitioners getting CAT scans, looking for fractures and other problems? He could not have looked at this record. He's just making a summary conclusion in that regard. And you look at these conclusions that Dr. Delheimer provides in that regard, you can't give his opinion any type of credibility. You have to knock it out. What did they say about Dr. Winger's opinion? Was he clear and plain? I think this is, in my opinion, if Dr. Delheimer looks at both reports, looks at the therapy, I mean, there's facts. I said Dr. Winger. Right. There's facts you could argue. And Dr. Winger considers that. In fact, how many times do you see a doctor who's treating someone look back and says in retrospect that L45 disc was a pain generator? I was focused on that disc fragment. But the problems he's having with his extension and on range of motion in therapy is out of normal. And looking back at it, that was also a problem, not just the disc below. So Dr. Winger at least considers these factors and then comes to an opinion. Dr. Delheimer starts with this conclusion that the adjuster made in July when they cut off his benefits with no medical opinion, and Dr. Delheimer works backwards. What did the commission mean when it said that the record showed, contrary to what Dr. Winger said, that the claimant's radicular symptoms had resolved following February 2005 surgery? Well, what they're talking about is his back pain. After the initial surgery, he had the fragment. He had leg pain. In his postoperative care, the pain was located to the low back. After the dog incident, there is no doubt that the character of the pain did change there. I don't think there's any controversy to that. But that's where we get into the point where the real question here is, was the L45 disc, is that decision that that disc wasn't injured in the initial accident against the manifest weight of the evidence. I don't think we can show that when he stepped over the dog that there wasn't a change in the character of his pain. But then if you find that that disc was initially injured under Vogel in the case law, then you have a disc that's injured, like Dr. Skoletsky and Dr. Winger discussed, that just was worsened. So the focus is ñ You're saying that's an aggravation of a preexisting condition? The dog? No. Whatever. I mean, what you just got done saying, that condition already existed, so now there's an aggravation. What is the theory that you're arguing now? Well, the dog incident, there's no doubt the condition changed after that. The act of stepping over the dog, did it aggravate it or make his symptoms worse? That's true. I think based upon the records here. But the focus is on, was that disc herniated and damaged in the initial injury? And then was the commission against the manifest weight in finding there was no injury to that disc? If you find that, then the subsequent incident is not ñ Let me ask you this. What objective medical evidence exists to establish a causal connection between the L4, L5 disc condition and the work-related accident? What objective medical evidence supports that argument? I can give three off the top of my head. One, the initial MRI, with then the second one that was enhanced that showed that there was a central disc protrusion. Two, Dr. Weinger's testimony in Skeleski's that that would cause back pain and that there was an annular tear seen on that MRI. That's why this stepping, very trivial, could then take an annular tear and have a worsening of the herniation. Three, the physical therapy was clearly not normal post-op. Ultraset, pain on extension is clearly evidence of stenosis or a central problem in the spine, which the doctors talk about. It's just not subjective complaints, but it's the type of complaints that he had when he was in physical therapy. Any history of any back injuries? There is no history of any back injuries or problems with this gentleman at any time prior. And so for those reasons, I had asked that the appellate court confirm the circuit court and reverse the commission's initial decision. Thank you. Thank you, counsel. Counsel, please. Thank you. I think it's important to appreciate that not only was the commission called upon to resolve medical fact questions, but fact questions in general. And by that I'm referring to the dog. When the petitioner comes in and under oath asks what happened with this dog, he says, I stepped over the dog. When he goes to the doctor, however, and the doctor records in his notes, not our IME doctor, Dr. Weinger, the doctor's notes say he gave a history that he fell over his dog. So although counsel wants to suggest, you know, this is an innocuous trigger of some sorts, even though those two words seem somewhat exclusive of one another, the issue of whether the L4 disc was ever even injured in the original injury. And it was not. We paid, as you know, for the L5S1 surgery. The man recovered beautifully within six days. The doctor said he doesn't have any radicular component. Those end days prior to him either stepping over or tripping over the dog, the man, to obfuscate things, said man had no complaints of pain. He has all this radicular onset after he stepped, if you will, or after he tripped over the dog, and you have other citations, and one of the judges mentioned them, and the one about him, the doctor, their doctor, insisting the basis of my opinion is in large part measured by the fact that he had ongoing radicular component ever since his original accident, and the arbitrator adopted by the commission lays that notion flat out as a no. I think one of you read everything but the last sentence, and that's when the commission says the foundation for Dr. Weinger's opinion is not supported by the record. So if Dr. Weinger wants to say, okay, I'm now looking at the MRI interpretation, not the films, this is Valesky now, not the films, just the MRI interpretation, and I'm going to reinterpret what the radiologist said. Even though he said there was no disc in the first L4 MRI, there is now a disc. I'm saying there was always one, even though all I've read is his report. I find that to be a preposterous leap of faith. But it doesn't really matter what I find to be stretching, and it doesn't, I think, really matter what counsel wants to maintain the one set of facts should be. What's important here is that we have hired and we are supposed to respect the medical judgment of the commission, and perhaps for very good reason, because they see hundreds of these cases. They know who these doctors are. They're familiar with the terminology. They build up a bank of experience. And in this instance, they have concluded, and not without good reason and not without giving you their reason, why we should turn down the L4-5 disc as something totally separate from this accident. When we get to the circuit court, unfortunately, and I wish I could give you more insight, and I've never seen one of these in 30 years, where a judge simply says reverse and remand, and doesn't give the parties any guidance as to why he thought the commission's decision was so erroneous that it arose to violate the standard that we're now hearing to judge the case. Thank you. Rebuttal, please. Any rebuttal? Pardon me? That's your rebuttal. Yes, Your Honor. I would like to point out a couple of points about counsel's argument there. That's your rebuttal. And. I didn't know that. You already spoke. I did. If he was going to invite me to speak. That's fine. I believe he was going to invite you to take advantage of it. That's my fault and not yours. Thank you. The court will take the matter under advisory.